**H. & G. Amusement Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.**

Docket No. 104445. Promulgated May 7, 1942.

*Joseph Getz, C. P. A.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

OPINION.

MURDOCK: The petitioner contends that the statute of limitations has run for both 1935 and 1936. It fails to demonstrate, however, that the statute has run for 1936, and the facts clearly disclose that it has not. The return was due on August 15, 1936, and was filed on July 15, 1936. The petitioner, on May 19, 1939, agreed with the Commissioner to extend the time for assessment to June 30, 1940. The notice of deficiency mailed on June 6, 1940, was thus timely and the statute of limitations has not run for 1936.

The question of most importance to the petitioner is whether the statute of limitations has run as to 1935. The return for that year was due on August 15, 1935, and was filed on July 9, 1935. The period was never extended by agreement. The general rule provided by section 275 (a) of the Revenue Act of 1934 is that taxes must be assessed within three years after the return was filed. "Filed" here means "was due." Sec. 275 (d). That three-year period expired in August 1938, whereas the notice of deficiency was not mailed until June 6, 1940.

The notice of deficiency makes no reference to this subject, but the Commissioner alleged in his answers that the petitioner omitted from its return for 1935 gross income properly includible therein in excess of 25 percent of the amount of gross income shown on the return. He thus seeks to make section 275 (c) applicable. That section provides that if a taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the gross income stated in the return, then the period of limitations shall be five years after the return was filed. The petitioner, having made a prima facie showing under the general

rule, contends that the burden of going forward to show that this exception to the general rule applies was upon the Commissioner. *Farmers Feed Co.*, 10 B. T. A. 1069; *Bonwit Teller & Co.*, 10 B. T. A. 1300. While there may be force to this contention of the petitioner, the point need not be decided here because the record contains all facts necessary for a decision on the merits.

The amount of gross income shown on the return was $27,789.95. The Commissioner contends that $30,000 has been omitted from gross income. This $30,000 is made up of two items, one of $18,000 and one of $12,000. If either item was "properly includible" in gross income, then the five-year period applies and the Commissioner was not too late. It is important to note that the statute provides for the five-year period only in case the taxpayer has omitted from gross income an amount "properly includible therein."

The $18,000 is a portion of the original $60,000 received by the petitioner in 1921 as advance rental for the theatre. Advance rental is income when received. *Sugar Creek Coal & Mining Co.*, 31 B. T. A. 344; *Grauman's Greater Hollywood Theatre, Inc.*, 37 B. T. A. 448; *C. H. Mead Coal Co.*, 31 B. T. A. 190; *O'Day Investment Co.*, 13 B. T. A. 1230; *Andrew J. Pembroke*, 23 B. T. A. 1176; affd., 70 Fed. (2d) 850; *Clinton Hotel Realty Corporation*, 44 B. T. A. 1215 (on appeal); *Renwick v. United States*, 87 Fed. (2d) 123. In the last case the court said:

Upon consideration of the facts, however, it is apparent that the advanced rentals were income in the full sense of the word. They were payments of rental upon a lease covering a period of years. Whether amortization should be allowed against them is a question for the Congress. If a taxpayer receives earnings upon property under a claim of right and without restriction as to its disposition, he has received income for which he is required to account, * * *

The taxpayers in some of the above cited cases were using a cash method of reporting income and others were using an accrual method. The $60,000 received by the petitioner in 1921 was clearly designated in the lease as advance rental. It was received as such by the petitioner; there was no restriction as to its disposition or use; and it was not merely a deposit as security for the performance of some provision of the lease. This last circumstance clearly distinguishes the case of *Warren Service Corporation v. Commissioner*, 110 Fed. (2d) 723, relied upon by the Commissioner. Thus, the $60,000 should have been reported in income for 1921 and it is not "properly includible" in gross income for 1935.

The $12,000 which the Commissioner has included in income for 1935 was a part of the $40,000 paid in equal installments every three months during the eight-year period, beginning in the calendar year 1921 and ending in the calendar year 1929. The entire $40,000 was rent paid for the use of equipment in the motion picture theatre. It

was paid long before 1935 and as advance rent was properly includible in gross income for prior years. It did not represent an amount properly includible in gross income for 1935.

The Commissioner makes an alternative argument in regard to the equipment in the theatre. He calls attention to paragraph 4 of the lease in which the $40,000 is described as a payment "for the equipment in the said theatre" instead of for the use of the equipment. He argues from this that the tenant purchased the equipment and the petitioner realized income to the extent of the fair market value of the equipment in 1935, when the equipment was turned back to the petitioner. The lease should be read in its entirety to determine the intention of the parties, and when so read an intention that title was to remain in the petitioner is disclosed. The tenant was not allowed to remove any of the equipment in the theatre "furnished by the landlord." The equipment was to be turned over to the landlord upon the termination of the lease and was to "remain the property of the landlord." The original agreement of March 5, 1921, between the petitioner and Muller and Schwartz, which provided how the lease should be drawn, stated that the tenant would "pay for the use of the equipment" $40,000 during the first eight years of the term, in equal installments, every three months, together with interest on each installment at the rate of 6 percent. There was no restriction on the use of this money by the petitioner. It was not put up as a pledge, but as advance rental.

No part of the $30,000 which the Commissioner has included in the petitioner's income for 1935 was "properly includible therein", and section 275 (c) has no application. The three-year statutory period of limitations provided by section 275 (a) expired before the notice of deficiency was sent and the Commissioner is foreclosed from assessing or collecting the deficiency which he has determined for 1935.

The Commissioner makes one further contention in an effort to show that the five-year period of (c) rather than the three-year period of (a) applies. He points to the fact that the petitioner chose from the beginning to report the $60,000 and the $40,000 ratably over the 20-year period of the lease and he says that on some principle akin to estoppel (although not strictly estoppel) the petitioner should not be heard to deny that the unreported portion of the $100,000 should be included in income for 1935 when the lease was terminated. He admits that he was at all times fully informed of the facts and by the very nature of his contention he admits that the $100,000 is not "properly includible" in the gross income of 1935 under any statutory provision. If the question were fairly presented, we would not suppose that estoppel, or anything akin to estoppel, would suffice for the purpose of making section 275 (c)

applicable. It is an exception to the general rule of the statute of limitations, and applies only in accordance with its terms. But the question of whether or not estoppel or something akin to estoppel might be the equivalent of "properly includible" need not be decided here, because the Commissioner has not made out a case. Both parties made an honest mistake of law in deciding how these advance rentals should be reported. Such a mistake will not support estoppel or anything akin to estoppel. *Sugar Creek Coal & Mining Co., supra; Estate of William Steele,* 34 B. T. A. 173; *Tide Water Oil Co.,* 29 B. T. A. 1208; *United States Trust Co. of New York,* 13 B. T. A. 1074; *Helvering* v. *Schine Chain Theatres, Inc.,* 121 Fed. (2d) 948.

The facts found clearly show that the petitioner is entitled to the deductions which it claimed for depreciation on the building and the theatre equipment for the taxable years. The respondent makes no argument in its brief in regard to depreciation on the building and his chief argument, if not his only argument, in regard to depreciation on equipment is that the equipment was sold prior to 1935 and reacquired in 1935. The petitioner, as has been stated above, did not sell the equipment, but at all times remained the owner of it. It was in use during all of the taxable years and the deductions claimed were proper.

*Decision will be entered under Rule 50.*